UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZACHARY SEALS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No.: |
| | ) |
| LENDLEASE CORPORATION, | ) |
| SCOTT MLADIC | ) |
| Defendant. | ) |

NOW COMES the Plaintiff, ZACHARY SEALS, by and through his attorney, CHIQUITA HALL-JACKSON of HALL-JACKSON & ASSOCIATES, P.C., complains of the Defendants, LENDLEASE CORPORATION and SCOTT MLADIC as follows:

### INTRODUCTION

1. This is an action for defamation of character based on a false publication made by an agent of the Defendant brought under Illinois Tort Law.

### JURISDICTION AND VENUE

2. Jurisdiction over the statutory violation alleged is conferred as follows: the Illinois Slander and Libel Act under 740 ILCS 145/0.01 and under diversity pursuant to 28 U.S.C. § 1332 (a)(1).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the publication and practices alleged herein, occurred in this district.

### PARTIES

4. The Plaintiff is ZACHARY SEALS of the county of COOK, in the state of ILLINOIS.

The Defendant is LEND LEASE CORPORATION (Lend Lease), is now, and at all times mentioned in this complaint was, a corporation organized, doing business in, and existing under the laws of the State Illinois, with its principal place of business in New York, New York and Sydney, Australia.

The Defendant SCOTT MLADIC is a resident of Will County and resides at 16266 W. Wyandot Ct., Lockport, IL 60441.

## STATEMENT OF FACTS

5. ZACHARY SEALS is a 55-year-old, African American man.

6. He is the youngest of ten siblings.

7. His family grew up in the housing projects known as Cabrini Green.

8. Due to the daily violence and living conditions he witnessed early on in life, ZACHARY made a promise to himself that he would make a better life for him and his family moving forward.

9. Currently, he is the father of two minor children.

10. In an effort to support his family he started working in the construction industry over 20 years ago.

11. ZACHARY started his career in the construction industry by working as a Laborer with Kenny Constructions in 1997.

12. Over the next couple of years Mr. Seals prepared to take the CHST (Construction Health and Safety Technician) exam which he successfully passed and is now recognized and accredited with the Board of Certified Safety Professionals, as a Certified Safety Professional.

13. The degree helped ZACHARY to advance himself within the construction industry.

14. He was promoted to Project Safety Manager in 1998.

15. Zachary worked for Kenny Construction until 2008 when he was recommended for a new position with Bovis Lend Lease by Dan Zarletti VP of Risk Management and Safety Director for Kenny Construction

16. He was hired as an Environmental, Health & Safety Manager and was promoted to Senior Project Environmental, Health & Safety Manager on March 22, 2013.

17. ZACHARY continued in that role and worked at various sites until he resigned in February 17, 2015.

18. He then started his employment with SML Capital Advisors (SML) in March of 2015.

19. During his lengthy career in the industry he worked without incident and received no serious discipline for his work performance.

20. Plaintiff has during all this time enjoyed a good reputation, both generally and in the field of construction in the Chicagoland area.

Plaintiff complains and for causes of action alleges as follows:

## COUNT I-DEFAMATION OF CHARACTER

21. During the Plaintiff's employment with SML he was offered to work on various jobsites as the Central Regional Manager.
22. His job duties included investigating incidents to identify causal factors, root causes and mandate corrective actions; providing hazard specific and regulatory safety training, and many more duties.
23. On or about March 2, 2016 ZACHARY received an email from Paul Linssen of SML to thank him for his commitment to SML and to acknowledge a job well done on his one year anniversary with the company. He also wanted to meet to discuss his bonus and the goals for 2016.
24. Shortly after that ZACHARY learned of an upcoming promotion that would allow for him to travel to New York as a regular consultant for the Starr New York accounts.

25. He was also in position to get new full time accounts with Starr and it was verified by an email that was sent on March 23, 2016, which asked that he sends three of this best reports to the company.
26. He was appointed as the SML consultant to conduct the bi-weekly job construction audits for the Lend Lease project located at 451 E. Grand, Chicago, IL.
27. SML had an upcoming meeting schedule to meet in Chicago with Lend Lease and others to discuss this project.
28. On or about March 30, 2016, defendants published via oral communications during a Haz-Trac meeting and stated that the Plaintiff was banned from any Lend Lease sites because of a confrontation that he had with Senior Environmental Health & Safety Manager Scott Mladic.
29. The statement made was clear that the Plaintiff was banned from any Lend Lease site. He could not be appointed to any assignments from his current employer, SML that would allow him to work directly at any Lend Lease sites because of this alleged horrible confrontation that took place with the Plaintiff and his former co-worker at Lend Lease, Scott Mladic.
30. In addition, it was stated that ZACHARY was terminated from Kenny Construction because he was not actively on the jobsite but was instead working a side business during those hours.
31. It was understood by those executives that were present during that meeting that the Plaintiff was banned from Lend Lease and any accounts they received. As a result, SML took the bi-weekly consultant position for the Grand project from the Plaintiff.
32. The entire statement that the Plaintiff had any prior confrontation with his former co-worker, Scott Mladic or anyone at Lend Lease is false as it pertains to plaintiff. The statements made about his departure from Kenny Construction is also false as it pertains to plaintiff.
33. Plaintiff is informed and believes, and based on that information and belief alleges, that at all times mentioned in this complaint, Scott Mladic was the agents and employees of the defendants and in doing the things alleged in this complaint were acting within the

course and scope of such agency and employment.

34. The statement made by Lend Lease employee and Manager, Scott Mladic that the Plaintiff was banned from any Lend Lease site was slanderous on its face. It clearly exposes plaintiff to hatred, contempt, ridicule and criticism because it charges Plaintiff with being a horrible employee and restricted him from receiving any account from SML that was directly connected to Lend Lease.

35. The statements were made in front of several executives in the industries. This included Superintendent Sergio Mojica, Vice President Phil Schawtz, which both are employees of Lend Lease. In addition, the CEO Paul Linssen and President Andrew Masciantonio of SML were both present; along with a few others.

36. As a proximate result of the above-described publication, plaintiff has suffered loss of not receiving the Lend Lease account in late March of 2016. Also, he suffered by not receiving any additional accounts while at SML during the months of April until September 2016.

37. As a result of these damaging statements the Plaintiff was forced to transfer a majority of his accounts to other SML employees and was without work for several months. As a result, he was forced to resign and has been job hunting since his resignation in late September 2016. He suffered loss of his reputation, shame, mortification, and injury to his feelings, all to his damage in the well-connected construction industry. To date, the Plaintiff is still unemployed despite having a few successful interviews.

38. Because it cannot be determined how long the Plaintiff will be out of work at this point a total amount of damages are to be established by proof at trial.

39. The above-described publication was not privileged because it was published by defendants with malice, hatred and ill will toward plaintiff and the desire to injure him, in that defendants had a desire to damage the Plaintiff's professional reputation and restrict him from working with any reputable company in the industry. Because of defendants' malice in publishing, plaintiff seeks punitive damages in excess of $200,000.00.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands a judgment against defendants, and each of them, for:

1. Compensatory damages according to proof;

2. Punitive damages;

3. Interest as allowed by law;

4. Costs of suit, including but not limited to attorney fees; and

5. Such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: March 13, 2017

Respectfully submitted,

/s/ Chiquita Hall-Jackson
Chiquita Hall-Jackson
Attorney for Plaintiff

Chiquita Hall-Jackson
Hall-Jackson & Associates P.C.
166 W. Washington Street Suite 275
Chicago, IL 60602
312-255-7105

## VERIFICATION

Under penalties of perjury as provided by law pursuant to §1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

_____
CLIENT NAME